UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KRISTEN WEIS, an individual,

       Plaintiff,

v.                     Case No: 2:19-cv-503-FtM-29NPM

BOARD OF TRUSTEES OF FLORIDA
GULF COAST UNIVERSITY, a
political subdivision of the
State of Florida,

       Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Dismiss (Doc. #27) filed on December 6, 2019. Plaintiff filed a Response (Doc. #28) on December 17, 2019 and, with leave of Court (Doc. #30), defendant filed a Reply (Doc. #31) on January 13, 2020. For the reasons set forth below, the motion is denied.

**I.**

Plaintiff Kristen Weis (Plaintiff or Weis) initiated this action against the Board of Trustees of Florida Gulf Coast University (Defendant) on July 18, 2019. (Doc. #1.) Plaintiff filed a one-count Amended Complaint (Doc. #20) on November 14, 2019. The Amended Complaint asserts a "teacher-on-student" sexual harassment claim against Defendant under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

The events set forth in the Amended Complaint relate to three distinct time periods:  Events prior to Plaintiff's attendance at Florida Gulf Coast University (FGCU); events occurring during Plaintiff's attendance at FGCU; and events occurring after Plaintiff was no longer a student at FGCU.  According to the Amended Complaint (Doc. #20):

**A.   Events Prior to Plaintiff's Attendance at FGCU**

Prior to his employment at FGCU, Rod Chestnutt (Professor Chestnutt) was a professor at the University of Nebraska.  (Doc. #20, ¶ 14.)  Professor Chestnutt has admitted that during his tenure at the University of Nebraska, he had sexual contact with three or four students; he was also named in a 2000 lawsuit by one of his former Nebraska students.  (<u>Id.</u> ¶¶ 16-19.)

In 2006, without conducting a criminal background check or a civil litigation check (<u>id.</u> ¶¶ 21-22), FGCU hired Professor Chestnutt "as the head of instrumental studies and the Wind Orchestra conductor."  (<u>Id.</u> ¶ 20.)

Professor William Larsen (Professor Larsen) was an adjunct professor of music at FGCU's Bower School of Music & the Arts "from 2006 through the summer of 2012."  (<u>Id.</u> ¶ 28.)  The Amended Complaint asserts that Professor Larsen had "firsthand knowledge" that FGCU knowingly allowed Professor Chesnutt's discrimination, harassment, and retaliation to continue.  (<u>Id.</u>)

It is alleged that in 2008, Professor Chestnutt began stalking a female student by constantly messaging her on social media and delivering her a bottle of alcohol.  (Id. ¶ 24.)  No further details are alleged about this stalking.

The Amended Complaint alleges that, at some unspecified point after Professor Chestnutt's hiring but prior to Professor Larsen's departure from FGCU, Professor Larsen "began to notice that [Professor] Chesnutt showed favoritism towards a certain type of female student." (Id. ¶ 29.)  Professor Larsen is alleged to have determined that Professor Chestnutt allowed unqualified and underperforming female students to pass classes when their performance was not at a passing level, but failed well-qualified and well-performing male students.  (Id. ¶¶ 30-31.)  Professor Chestnutt is alleged to have been having sexual relationships and other personal interactions with those female students.  (Id. ¶¶ 32-33.)

Professor Larsen "observed Prof. Chesnutt sexually harass a female student and then fail her very well-qualified boyfriend." (Id. ¶ 34.)  "When one female student ended her relationship or rejected [Professor] Chesnutt's advances," Professor Larsen observed that Professor Chestnutt "retaliated by assigning poor grades." (Id. ¶ 35.)  Professor Larsen heard Professor Chestnutt make inappropriate remarks to female students about their appearance and tight-fitting clothing, and "heard reports from

several female students that they would skip or purposely cancel meeting with Prof. Chesnutt because they felt that there would be 'strings attached' to a one-on-one meeting with him."  (Id. ¶ 36.)

During the 2012 academic year, Professor Larsen "reported this concerning behavior to FGCU's administration through his department chair," and reported such behavior "several times to FGCU administration."  (Id. ¶ 37.)  Professor Larsen also "advised two female students and a male student to meet with an FGCU dean to discuss what was happening, which they did."  (Id.)  FGCU's "department chair had the authority to take appropriate remedial action" upon learning of Professor Larsen's complaint.  (Id. ¶ 38.)  Ultimately, FGCU "took no action," did not "open an informal investigation, a Title IX investigation or refer any complainant to the Title IX coordinator."  (Id.)

Shortly after making his complaints about Professor Chesnutt's behavior, Professor Larsen was "informed that his contract would not be renewed and that his employment with FGCU would end."  (Id.)  Professor Larsen left FGCU in the summer of 2012.  (Id. ¶ 28.)

## B.   Plaintiff's Attendance at FGCU

Plaintiff was a student at FGCU's Bower School of Music & the Arts from the Spring of 2014 through the Spring of 2017.  (Doc. #20, ¶ 11.)  Given the dates involved, none of Professor Larsen's

observations or activities involved Plaintiff as the victim of Professor Chestnutt's conduct.

Beginning in 2015, Professor Chestnutt is alleged to have engaged in continuing misconduct directed at Plaintiff. These actions are summarized below:

- At some unspecified point in 2015, while Plaintiff "was working as a stage manager during a concert," Professor Chestnutt "put his hand on the small of [Plaintiff's] back in a sensual manner," which made Plaintiff feel "extremely uncomfortable." (Id. ¶ 39.)

- On or about October 31, 2016, Plaintiff went to Professor Chestnutt's office in a Halloween costume which included a pink tutu. Professer Chestnutt began leering at Plaintiff, grinning from ear to ear, and then told her she looked really good in pink and had picked a nice day to come to his office. (Id. ¶¶ 40-41.)

- Also in 2015, Plaintiff met with Professor Chestnutt "to discuss a possible scholarship." (Id. ¶ 42.) During that meeting, Professor Chestnutt informed Plaintiff that to qualify for the scholarship, "there would be 'incentives,' that being that if [Plaintiff] acquiesced to a sexual relationship with him that she would receive her desired scholarship." (Id.) Plaintiff "rejected [Professor] Chestnutt's proposition and ultimately did

not receive a scholarship that semester." (<u>Id.</u> ¶ 43.) Plaintiff received the scholarship the following semester, "after numerous emails to many other individuals at FGCU." (<u>Id.</u>)

- Professor Chestnut would retaliate against Plaintiff for rejecting his advances by assigning her poor grades. (<u>Id.</u> ¶ 35.)

- After Plaintiff had rescheduled a "jury" before the school's music professors, Professor Chestnutt told her in front of students and professors that she needed to make herself "more available" to her husband, which Plaintiff took to imply that she needed to be more sexually available. (<u>Id.</u> ¶¶ 44-46.)

- During Plaintiff's final semester at FGCU in 2017, Plaintiff excluded Professor Chestnutt from a junior recital, as was her right. Professor Chestnutt retaliated by making comments such as "oh, I heard you actually passed?" (<u>Id.</u> ¶ 48.)

- After Plaintiff rejected these advances, and it became clear to Professor Chestnutt that she would not engage in a sexual relationship with him, Plaintiff received an email threatening to kick her out of the music program because she was a threat to herself and others. (<u>Id.</u> ¶ 49.)

- From 2015 through 2017, Professor Chestnutt frequently commented on Plaintiff's appearance. Professor Chestnutt made remarks "such as 'good girl, you're very good at this, aren't you?' when referring to [Plaintiff's] ear training skills," and "would often interrupt" Plaintiff to "ask her irrelevant personal questions about her appearance . . . while eyeing her up and down." (Id. ¶¶ 52-53.)

- Professor Chestnutt "often call[ed] [Plaintiff] into his office to discuss issues that could have been handled via email." (Id. ¶ 54.)

- For two years in a row, Professor Chestnutt nominated Plaintiff for a music education scholarship that he funded, even though Plaintiff "was in a different major (music therapy)" that did not qualify for the scholarship. (Id.) Professor Chestnutt "attempt[ed] to get [Plaintiff] to change her major and take his scholarship." (Id.)

Plaintiff withdrew from FGCU in the spring of 2017. (Id. ¶ 62.) Plaintiff withdrew because she "needed [Professor Chestnutt's] endorsement to pass and thus graduate (which she would never get because of his retaliation)." (Id.) Plaintiff does not allege that she, or anyone on her behalf, ever informed any FGCU official of this conduct by Professor Chestnutt.

C.    **Events After Plaintiff Left FGCU**

In August of 2017, FGCU's Provost "received a flash drive from a student with information pertaining to [Professor] Chesnutt." (<u>Id.</u> ¶ 64.)  The flash drive contained "provocative" photographs of some of Professor Chesnutt's students. (<u>Id.</u> ¶ 65.)  Professor Chesnutt subsequently "admitted to having an inappropriate relationship with a student while the student was in his class." (<u>Id.</u> ¶ 66.)  FGCU then placed Professor Chesnutt on administrative leave and opened an investigation into Professor Chesnutt's behavior. (<u>Id.</u> ¶ 67.)  Prior to the conclusion of the investigation, Professor Chesnutt resigned from his position. (<u>Id.</u> ¶ 68.)

FGCU's investigation continued and revealed that five female complainants reported that Professor Chesnutt engaged in misconduct. (<u>Id.</u> ¶¶ 69-74.)  In part, the complainants reported that Professor Chesnutt made comments about their appearance, engaged in unwanted touching, enticed them to engage in sexual relationships, and retaliated against them for rejecting his advances. (<u>Id.</u> ¶¶ 70-74.)  There is no allegation that Plaintiff was one of the five complainants.

D.    **The Cause of Action**

The Amended Complaint sets forth a one-count claim against the FGCU Board of Trustees.  Plaintiff alleges a violation of Title IX because FGCU created and/or tolerated a hostile educational environment caused by Professor Chestnutt's misconduct and FGCU's failure to do anything about it.  (Doc. #20, ¶¶ 81-84.)  More specifically, Plaintiff alleges that "FGCU discriminated against [her] including but not limited to failing to conduct a prompt investigation of complaints of sexual harassment and failing to implement measures pending an investigation of those complaints described herein . . . ."  (Id. ¶ 87.)[1]  As a result, Plaintiff "suffered indignity and humiliation and seeks monetary damages . . . ."  (Id. ¶ 88.)

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

---

[1] The Amended Complaint mentions "retaliation" in several places, which can be another type of discrimination under Title IX.  The Court does not read the Amended Complaint as asserting a cause of action for Title IX retaliation, and if Plaintiff intended otherwise she must seek leave to file another amended complaint.

(citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level."  Id. at 555.  See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

Put succinctly, "Title IX prohibits sex discrimination by recipients of federal education funding." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). The pertinent statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied private right of action under Title IX, Cannon v. University of Chicago, 441 U.S. 677 (1979), and that money damages are available in such suits. Franklin v. Gwinnett County Public Schools, 503 U.S. 60 (1992). Among other things, the Supreme Court has held that a teacher's sexual harassment of a student can constitute actionable discrimination under Title IX for which money damages are available. Franklin, 503 U.S. at 74-75; Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 285 (1998); see also Doe v. Sch. Bd. of Broward County, Fla., 604 F.3d 1248, 1254 (11th Cir. 2010); Sauls v. Pierce Cty. Sch. Dist., 399 F.3d 1279, 1283 (11th Cir. 2005).

The Eleventh Circuit has instructed that the Court's analysis in a "teacher on student" discrimination case is governed by Gebser.

> In *Gebser*, the Supreme Court made plain that not all
> sexual harassment by teachers is sufficient to impose
> liability on a school district. Because "Title IX is
> predicated upon notice to an 'appropriate person' and an
> opportunity to rectify any violation," id. at 290, 118
> S.Ct. at 1999 (citing 20 U.S.C. § 1682), the Court
> explained that school districts may not be held liable
> on a theory of *respondeat superior* or mere constructive
> notice, id. at 285, 118 S.Ct. at 1997. Rather, Title IX
> liability arises only where "an official of the school
> district who at a minimum has authority to institute
> corrective measures on the district's behalf has actual
> notice of, and is deliberately indifferent to, the
> teacher's misconduct." Id. at 277, 118 S.Ct. at 1993.
>
> Therefore, applying the *Gebser* framework to the summary
> judgment context requires three related inquiries.
> First, the plaintiff must be able to identify an
> "appropriate person" under Title IX, i.e., a school
> district official with the authority to take corrective
> measures in response to actual notice of sexual
> harassment. See Floyd v. Waiters, 171 F.3d 1264, 1264
> (11th Cir. 1999). Second, the substance of that actual
> notice must be sufficient to alert the school official
> of the possibility of the Title IX plaintiff's
> harassment. See Gebser, 524 U.S. at 291, 118 S.Ct. at
> 2000. And finally, the official with such notice must
> exhibit deliberate indifference to the harassment. See
> Sauls, 399 F.3d at 1284.

Broward, 604 F.3d at 1254; see also J.F.K. v. Troup County School

Dist., 678 F.3d 1254, 1255-56 (11th Cir. 2012). Tweaking Broward

to account for the difference in the motion to dismiss standard,

a plaintiff must plausibly set forth in his or her complaint: (1)

the identity of an "appropriate person," i.e., a school official

"with the authority to take corrective measures in response to

actual notice of sexual harassment"; (2) that the substance of

that actual notice was sufficient to alert the school official of

the possibility of the Title IX plaintiff's harassment; and (3)

that the school official with such notice exhibited at least deliberate indifference to the harassment.

**IV.**

Defendant argues that it is entitled to dismissal of the Amended Complaint because Plaintiff has failed to plausibly plead all three of the required elements of a "teacher-on-student" Title IX cause of action.   The Court will address each argument below.

**A.   "Appropriate Official"**

Defendant argues that Plaintiff failed to allege that an "appropriate official" had knowledge of Professor Chestnutt's alleged harassment of Plaintiff.  (Doc. #27, p. 8.)  Acknowledging that Plaintiff alleges Professor Larsen complained of Professor Chestnutt's behavior to his department chair, Defendant disputes "that FGCU's 'department chair' is an appropriate person with authority [to] correct [] harassment" under Title IX.  (Id.)

> For Title IX purposes,
>
> [a]n "appropriate person" under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination. Consequently, in cases like this one that do not involve official policy of the recipient entity, we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.

Gebser, 524 U.S. at 290.  The official must be "high enough up the chain-of-command that his acts constitute an official decision by

13

the [educational institution] itself not to remedy the misconduct." <u>Floyd v. Waiters</u>, 171 F.3d 1264 (11th Cir. 1999).

Here, the Amended Complaint alleges that Professor Larsen made a complaint to his department chair about Professor Chestnutt's alleged misconduct, and that the FGCU "department chair had the authority to take appropriate remedial action." (Doc. #20, ¶ 38.) Defendant responds that the allegation regarding the department chair's authority is "conclusory . . . [and] cannot be taken as true." (Doc. #27, p. 8.) But under the motion to dismiss standard, Plaintiff is entitled to the benefit of reasonable inferences from the facts pled. <u>Iqbal</u>, 556 U.S. at 678. While it may turn out otherwise[2], it is certainly a reasonable inference that a department chair at a university has the authority to take corrective action to end discrimination by one of the department's professors against one of the department's students.

Viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has plausibly alleged that Professor Larsen's department chair at the FGCU Bower School of Music & the Arts had the authority to institute corrective measures over

---

[2] The ultimate question of who is an appropriate person is necessarily a fact-based inquiry because officials' roles may vary among universities. <u>See e.g.</u> <u>Broward</u>, 604 F.3d at 1256.

Professor Chestnutt's alleged misconduct, and thus was an "appropriate official" within the meaning of Title IX.[3]

**B.    Existence and Substance of Actual Notice**

Private damages actions are available only where recipients of federal funding have had actual and adequate notice that they could be liable for the conduct at issue.  Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 640-42 (1999); Franklin, 503 U.S. at 74.

Defendant correctly argues that the Amended Complaint does not allege "that any employee of Defendant had knowledge of [Professor] Chestnutt's purported harassment of Plaintiff" and that "Plaintiff never complained about harassment while enrolled [at] FGCU." (Doc. #27, p. 8.)  Defendant argues that in light of this, Plaintiff's conclusory allegations that Defendant was on notice of Professor Chestnutt's harassment are insufficient to plausibly plead satisfaction of the actual notice requirement.  While conceding she made no complaints herself, Plaintiff argues that based upon the complaints by Professor Larsen and three FGCU students, Defendant was on notice of Professor Chestnutt's alleged harassment of other students prior to Plaintiff's arrival at FGCU.

---

[3] Plaintiff also argues that a dean also was an appropriate official who received actual notice.  The Court finds that the allegations as to what the dean was told is not alleged with sufficient detail to establish actual knowledge even if the dean is another appropriate person.

This is sufficient, Plaintiff argues, to satisfy the actual notice requirement.  Defendant responds that such complaints, even if constituting notice regarding Plaintiff, are legally insufficient "to alert a school official of the possibility of harassment of Plaintiff."  (Doc. #27, p. 9.)

"There are different ways by which such actual notice may be satisfied."  J.F.K. v. Troup County Sch. Dist., 678 F.3d 1254, 1260 (11th Cir. 2012).  As in J.F.K., there are no facts in the Amended Complaint suggesting that an appropriate official had knowledge that Professor Chestnutt was actually sexually harassing Plaintiff.  While notice of sexual harassment provided by or on behalf of the specific Plaintiff asserting a Title IX claim would be sufficient, it is not a necessary requirement.  "Actual notice" of a Title IX Plaintiff's harassment need not be provided by the Plaintiff herself.  Broward, 604 F.3d at 1257 (citations omitted). Indeed, "no circuit has interpreted [the] actual notice requirement so as to require notice of the prior harassment of the Title IX plaintiff _herself_."  Id. (emphasis in original)(citations omitted); see also Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp., 551 F.3d 599, 605-06 (7th Cir. 2008)(Under Title IX, "a school district need not possess actual knowledge of a teacher's [harassment] directed at a _particular plaintiff_." (emphasis in original)(citation omitted)); Escue v. N. OK Coll., 450 F.3d 1146, 1154 (10th Cir. 2006)("[T]he actual notice standard does not set

the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." (citation and quotation omitted)).

A second way to satisfy the notice requirement would be to show that an appropriate official (here, the department chair) had actual knowledge of sexual harassment by Professor Chestnutt of students other than Plaintiff sufficient to alert the department chair of the possibility of Plaintiff's sexual harassment by Professor Chestnutt. J.F.K., 678 F.3d at 1260. An educational institution may be deemed to have "actual notice" of a student-plaintiff's harassment in a "teacher-on-student" case when it is aware of the instructor's "similar misconduct with other students." Bailey v. Orange Cty. Sch. Bd., 222 F. App'x 932, 933 (11th Cir. 2007). Establishing actual notice in such a fashion is fact-intensive, and is sometimes successful and sometimes insufficient. See e.g. Broward, 604 F.3d at 1250-54, 1259 (two prior complaints were enough to satisfy Doe's burden of raising a material fact about actual notice because "[the two] complaints, when viewed collectively, provided actual notice to [the Principal] of a pattern of sexual harassment and a series of related allegations occurring over a period of nine months in [the teacher's] math classroom."); J.F.K., 678 F.3d at 1261 (while appropriate official knew employee's conduct was "inappropriate, devoid of professionalism, and reeked of immaturity," the known

conduct was not of the same type of conduct of a sexual nature as the teacher in <u>Broward</u>); <u>Davis v. DeKalb County School District</u>, 233 F.3d 1367, 1373 (11th Cir. 2000) (a prior complaint about the teacher-abuser by a non-party victim was not enough to put principal and school board on notice).

Defendant argues that even if information from Professor Larsen and the three students establish the existence of some level of notice, Plaintiff failed to plausibly allege that Defendant had sufficient notice "of the possibility of [Professor Chestnutt's] harassment of Plaintiff." (Doc. #27, p. 9.) Defendant reasons that Plaintiff has "not allege[d] the contents of [Professor Larsen's] complaint with any specificity." (<u>Id.</u>) Alternatively, Defendant contends that the content of Professor Larsen's complaint was not sufficiently similar to Professor Chestnutt's alleged misconduct directed at Plaintiff to place Defendant on actual notice of sexual harassment.

In paragraphs 28-36 of the Amended Complaint, Plaintiff makes the following allegations concerning information from Professor Larsen: (1) Professor Chestnutt "allowed unqualified and underperforming female students to pass classes when their performance was not to a passing level," while failing qualified male students; (2) Professor Chestnutt was having sexual relationships with the underperforming students; (3) "[w]hen one female student ended her relationship or rejected [Professor]

Chesnutt's advances, [Professor] Larsen observed that [Professor] Chesnutt retaliated by assigning poor grades"; (4) Professor Larsen overhead Professor Chestnut comment on the appearance of female students; and (5) Professor Larsen heard reports from several female students that they "would skip or purposely cancel" meetings with Professor Chestnutt because "they felt that there would be 'strings attached' to a one-on-one meeting with him." (Doc. #20, ¶¶ 28-36.)  In paragraph 37 of the Amended Complaint, Plaintiff further alleges that Professor Larsen "reported this concerning behavior" described in the preceding paragraphs to "FGCU's administration through his department chair."  (Id. ¶ 37.) Thus, contrary to Defendant's assertion, the Amended Complaint does sufficiently state the contents of Professor Larsen's alleged complaint.

As to Professor Chestnutt's alleged harassment of Plaintiff specifically, the Amended Complaint alleges in relevant part that: (1) Professor Chesnutt made remarks about Plaintiff's appearance; (2) Professor Chesnutt informed Plaintiff that to qualify for a scholarship, "there would be 'incentives,' that being that if [Plaintiff] acquiesced to a sexual relationship with [Professor Chestnutt] that she would receive her desired scholarship"; (3) after rejecting Professor Chestnutt's advances, Plaintiff did not receive the scholarship alluded to by Professor Chestnutt; and (4) Plaintiff ultimately withdrew from FGCU because she "needed

[Professor Chestnutt's] endorsement to pass and thus graduate (which she would never get because of his retaliation)." (Doc. #20, ¶¶ 41-43, 47, 52, 53, 57, 62.)  Such allegations were similar to the conduct Professor Larsen allegedly reported to his department chair.[4]  "Simply put, the actual notice must be sufficient to alert the decision-maker to the possibility of sexual harassment by the teacher." J.F.K., 678 F.3d at 1256.  Viewing the alleged facts in the light most favorable to Plaintiff, the Court finds that, based upon Professor Larsen's alleged complaint, Plaintiff has plausibly stated that Defendant had sufficient actual notice of Professor Chestnutt's alleged harassment of female students.

## C. Deliberate Indifference

Lastly, Defendant argues that Plaintiff failed to plausibly allege that an appropriate person was deliberately indifferent to Professor Chestnutt's alleged misconduct.  Defendant reasons that "[b]ecause Plaintiff never complained to Defendant about

---

[4] The Court is unpersuaded by Defendant's assertion that the conduct allegedly described by Professor Larsen and Plaintiff are not similar because Professor Larsen's complaint "did not involve [Professor] Chesnutt's use of scholarships, which is central to Plaintiff's Title IX claim." (Doc. #27, p. 10.)  While it appears Professor Larsen's alleged complaint did not describe this particular behavior, the Court finds the overarching content is nonetheless similar to the conduct Plaintiff describes in the Amended Complaint.

harassment by [Professor] Chesnutt, Defendant could not have been deliberately indifferent to the harassment."  (Doc. #27, p. 10.)

Title IX requires "that a recipient of federal education funds may be liable in damages under Title IX where it is deliberately indifferent to known acts of sexual harassment by a teacher." Davis, 526 U.S. at 641 (citing Gebser, 524 U.S. at 291).  Liability arises from "an official decision by the recipient not to remedy the violation." Gebser, 524 U.S. at 290. Defendant essentially restates its argument that notice of sexual harassment must be provided by the specific plaintiff asserting a Title IX claim.  As noted *supra*, however, the Eleventh Circuit has explicitly rejected such a position.  Broward, 604 F.3d at 1257.

Defendant also argues that "[t]o the extent that Plaintiff's claim is predicated on . . . [Professor] Larsen's complaint about [Professor] Chesnutt," Plaintiff failed to plausibly assert "that FGCU's response was clearly unreasonable."  (Doc. #27, p. 11.) The Court disagrees.

An official with notice of sexual harassment is deliberately indifferent "where the [] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648.  The Amended Complaint alleges that after Professor Larsen and three FGCU students complained of Professor Chestnutt's alleged misconduct, "FGCU took no remedial action and did not even conduct an investigation."

(Doc. #20, ¶ 61.)  Accepting Plaintiff's allegations as true and viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has plausibly alleged that Defendant was deliberately indifferent to Professor Chestnutt's alleged misconduct.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss (Doc. #27) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___7th___ day of May, 2020.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record